1829.

Arthur
v.
Case.

---

\*ARTHUR AND WRIGHT *v.* CASE AND HARWOOD.                    [\*447]

As a general rule, persons who own lands on the different sides of a private stream, hold to the middle of the stream.

And where hydraulic works are erected on both banks, the owners of the works are each entitled to an equal share of the water. If the owner of the mills on either side attempts to deprive the other of the use of his share of the water, of which he has been in the quiet enjoyment, and thus to destroy his mills, a preliminary injunction will be granted, as the injury might be irreparable.

THE complainants are the owners of certain mills and mill privileges on the lower falls at Ticonderoga, on the north side of the outlet of Lake George; and the defendants own mills and mill privileges on the south side of the same stream. There is an island in the middle of the outlet, and the main current of the stream naturally runs on the north side of the island. A dam is at present extended from the island to the south shore, on which the defendants' mills are situate; and a similar dam runs from the

March 3d.

island to the north shore, by means of which the complainants' mills are supplied with water. In dry seasons there is not sufficient water in the stream to supply all the mills. The defendants claiming a right to have their mills first supplied, commenced building a dam from the island to strike the north shore some distance above the present dam, the effect of which would be to deprive the complainants' mills of water in the dry seasons, and turn the whole stream to the south of the island. The complainants obtained an injunction to restrain the defendants from building this new dam; and on the coming in of the answer, a motion was made to dissolve the injunction.

*J. King* and *A. Van Vechten* for the motion.

*John V. Henry* for the complainants.

*THE CHANCELLOR:—There is no doubt of the jurisdiction of the court in this case, as the new dam would in a great measure destroy the complainants' valuable mills which have been in operation many years. The regulation of the use of water upon the different sides of a stream for hydraulic purposes, is so essential to the manufacturing interests of our country, and in fact to every branch of domestic industry, that it would be deplorable if any of these important establishments could be destroyed by any individual, or combination of persons, and the owners left to seek an uncertain remedy by an action for damages in a court of law.

It is a general principle that persons owning lands on the different sides ·of a private stream hold to the centre thereof, or to the middle of the water. *Ex parte Jennings,* 6 Cowen, 518.) And where hydraulic works are erected on both banks, if there is not sufficient water to afford a full supply for all, the owner on each side is entitled to an equal share of the water, or so much thereof as is necessary for his mills, if less than a moiety is sufficient. If the

owner of the mills on either side has been in the quiet enjoyment of the water privilege, and the other attempts to deprive him of it, and thus destroy his mills, a preliminary injunction is proper, as the injury might be irreparable. (*Robinson* v. *Lord Byron*, 1 Bro. Ch. R. 588; 2 Coxe's Cas. 4; S. C., *Lane* v. *Newdegate*, 10 Ves. 193.) In this case, the court must see that erecting the dam by the defendants, in the manner proposed, will entirely cast off the water from the complainants' mills, except when the stream is so high as to run over the dam. It, therefore, is necessary to look into the answer to see whether the defendants have the right, or whether there is any thing to take this case out of the general rule as to the use of the water.

Prior to July, 1793, the lands on the north side of the river belonged to S. Deal, P. Deal and Jane Nichol, under whom the complainants claim. P. Schuyler owned the lands on the south side, and also either owned or claimed the lands under the water to the north side of the stream. George Tremble was in possession of the premises claimed by Schuyler, under a lease from him for twenty one years from the 1st of May, 1788. On the 5th of July, 1793, Schuyler sold and *conveyed to S. and P. Deal and J. Nichol in fee a part of the land under the water of the river or outlet of Lake George on the north side, and extending about to the centre of the river, and embracing the whole or a great portion of the location of the dam intended to be erected by the defendants; saving and reserving to the grantor and his heirs and assigns a right to butt any dam or dams on both sides or shores of the river, as he or they might think proper; and subject, also, to the lease executed to Tremble. In this conveyance, Schuyler also covenanted with the grantees that after the expiration of the lease to Tremble, it should be lawful for them, or their heirs or assigns, to butt any dam or dams on both sides or shores of the river; which dam or dams, and the river or waters therein, might nevertheless be used and occupied by the grantor and

[*449]

1829.

Arthur
v.
Case.

his heirs and assigns, on his or their paying such proportion of the expense and charges of erecting such dam or dams, and keeping the same in repair, as should be adequate to such use and occupation.

The defendants have derived title under Schuyler. And under the reservation contained in the grant from him to S. and P. Deal and J. Nichol, they claim the right to use so much of the water of the river as may be necessary for the use of any hydraulic works which may be erected by them on the south side, although it should take the whole, or stop it from flowing to the complainants' mills in time of low water. On a careful examination of the provisions of this deed, and the relative situation of the parties at the time it was made, I am satisfied that claim cannot be sustained. The right to butt dams on the lands of the grantees on the north bank of the river is not technically correct as a reservation, because it was no part of the thing granted. It must be construed in the same manner as though the deed was executed by the grantees and this was inserted as a covenant on their part. Before the execution of that deed, neither party had a right to butt his dam upon the lands of the other on the opposite side of the stream; but for the accommodation of each, a reciprocal right was intended to be given. There is nothing in the deed from which a reservation of more than a moiety of the

[*450]

water can be inferred, and the grant must *always be construed most strongly against the grantor. From the then situation of the country, it was not probably contemplated by either that there ever would be a deficiency of water. The parties are entitled to participate equally in the use of the water; and if either draws more than a fair proportion, or if it is necessary to excavate in the bed of the river to give the defendants a due proportion, the manner of exercising the right, and the extent and nature of the excavation, must be settled under the direction of the court, on the report of a master, or in the mode adopted by the

Master of the Rolls in *Martin* v. *Stiles* & *Sherman*, (Mosel. Rep. 144.)

The motion to dissolve the injunction is denied, with costs.