The PATTEN PAPER COMPANY (LIMITED) and others, Respondents, vs. THE KAUKAUNA WATER-POWER COMPANY and others, imp., Appellants.

SAME, Respondents, vs. HUNT and another, imp., Appellants.

*November 28, 1887 — February 28, 1888.*

*Equity: Jurisdiction: Rights in water-power: Parties: Diversion of water: Pleading: Misjoinder of causes of action.*

1. The equity powers of a court may be exercised to determine the respective rights of parties in a water-power, and to regulate the use of the water of a river for hydraulic purposes by the several riparian proprietors to whose lands the power is appurtenant.

2. Persons who may have an interest in the questions to be determined in such an action, although the nature of such interest is not known to the plaintiffs, may be made parties, under sec. 2603, R. S.

3. A complaint showing that the water of a river in its natural state would flow in certain channels, and that the defendant has turned away the water which was accustomed to flow to plaintiff's dam by one of such channels, and threatens to continue such diversion of the water, to the destruction of the plaintiff's rights in the water-power, is *held* to state a cause of action.

4. Allegations as to one of several defendants, which, if proved, would not entitle the plaintiff to any damages or relief against that defendant, do not render a complaint demurrable on the ground that several causes of action have been improperly joined.

APPEALS from the Circuit Court for *Outagamie* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action was brought by the respondents for the purpose of settling their rights in and to a certain water-power on the Fox river, and to restrain some of the appellants from diverting the water of said river from their said power. The material facts alleged in the complaint are the following, viz.: That the Fox river is a public river, and at the place in question flows in nearly an easterly course through township No. 21 N., of range 18 E., of the fourth principal meridian, in Outagamie county, Wisconsin, and between sections 21 and 22, south of the river, and section 24 and private claims Nos. 1 and 35, north of the river; that the volume of water which naturally flows in the river at that place is about 300,000 cubic feet per minute in the ordinary stage of water; that where the river flows between sections 21 and 22, and section 24 and said private claims, it is divided into several separate channels by four islands numbered 1, 2, 3, and 4; that said islands were surveyed by the United States government, and sold as other public lands to private persons; that island No. 1 contains 6.72 acres, No. 2 contains 2.2 acres, No. 3, 10.20 acres, and No. 4, 22.53 acres; that island No. 4 is about 135 rods long, with the stream, and lies next the south shore of the river, and extends about 70 rods up stream above the head of

island No. 3; that island No. 3 lies partly between island No. 4 and the north bank of the river, is about 115 rods long, with the stream, and extends about 50 rods below the foot of island No. 4; that island No. 2 lies south ·of the lower end of No. 3, and island No. 1 lies south of island No. 2 and the foot of island No. 4, and between the foot of said island No. 4 and the south shore; that islands Nos. 3 and 4 divide the. stream into three channels above islands Nos. 3, 2, and 1, and islands Nos. 3, 2, and 1 divide the stream into four channels below island No. 4; that between the south shore of island No. 1 runs a part of the water of the south channel, and between islands Nos. 1 and 2 runs part of the water of the south channel and a part of the water of the middle channel, and between islands Nos. 2 and 3 runs part of the water of the middle channel. In the complaint the channel between the south shore and island No. 4 is designated as the south channel; the channel between island No. 4 and island No. 3 as the middle channel; and the channel between island No. 3 and the north shore as the north channel.

♦ The complaint then alleges that, in a state of nature and before there was any interruption or diversion of the waters of the stream, about five sixths of the water of the stream flowed though the channel north of island No. 4, and about one sixth·through the channel south of said island; that about one third of the waters of the river ran and passed through the channel between islands Nos. 4 and 3, and about one half of the water of the river flowed through the channel between said island No. 3 and the north shore of the river; that no improvements for hydraulic purposes have been made on islands Nos. 1 and 2, and that the plaintiffs do not know what volume of water passes between the south shore and island No. 1, or between islands 1 and 2, or between islands 2 and 3, in their natural state; and the plaintiffs allege˙ that they do not know whether it is

practicable or not to make any use of hydraulic power on either of the islands Nos. 1 or 2, and that they have made the owners of these islands parties to this action that they might be in court to present any claim they, or either of them, may have as to the amount of water flowing in the south or middle channel of said river.

The plaintiffs then allege that in 1879 and 1880 Mathew Mead and M. J. Edwards were the owners of islands Nos. 4 and 3, and that they then built a dam and made a mill-pond between islands Nos. 4 and 3, which mill-pond received the water of the said middle channel, and raised a head of about fifteen feet, which is called the " Mead & Edwards Water-Power." They then allege that the plaintiff *The Patten Paper Company* acquired from said Mead & Edwards the right to use 25,000 cubic feet per minute from the hydraulic power created by said dam and pond, and have constructed very valuable mills and works for the use of said power, particularly describing the property owned by said company. They also allege the ownership of a part of said hydraulic power created by said dam and pond, by the plaintiff *The Fox River Pulp & Paper Company*, and that said *Fox River Pulp & Paper Company* have erected very expensive and valuable buildings and works for the purpose of using such hydraulic power. The property of this company is also particularly described in the complaint. They also allege that in 1881 the Green Bay & Mississippi Canal Company was the owner of the undivided half of the north side of island No. 4, and the south side of island No. 3, and of the Mead & Edwards water-power, and that said company leased certain described lands on island No. 4 to the plaintiff *The Union Pulp Company*, together with 20,000 cubic feet of water per minute, to be drawn from the said Mead & Edwards water-power for hydraulic purposes, for the term of ten years, with the right of renewal for one hundred years, which said lease is

still owned by said company, and that they have erected a large and valuable mill in which to use such hydraulic power. They also allege the ownership by the defendant George F. Kelso of a part of the said Mead & Edwards water-power, particularly describing the same.

The plaintiffs then allege that a dam has been built across the said Fox river about one hundred rods above the head of island No. 4, "and the defendant *The Kaukauna Water-Power Company* has built a wide and deep canal from the mill-pond above said dam along in a line north and south of the south bank of said river, to a point below the lower end of island No. 4; that such canal is large enough to pass, and is intended to pass, the half of the flow of said river; that there are no openings from said canal into the river to return water to the river above the head of island No. 4, or so that the same can flow into the middle channel of said river and come into said Mead & Edwards water-power; that it is the intention of the said *Kaukauna Water-Power Company* to draw from said river above said dam the half of the water flowing in said river, and pass the same through their said canal and through the mills and factories of itself and its lessees into said river at a point below the head of island No. 4, and so that the same shall not and cannot pass into said middle channel and down into said Mead & Edwards water-power;" that said *Kaukauna Water-Power Company* proposes, threatens, and intends to carry and pass through its canal from said mill-pond, maintained by the dam above said island No. 4, down below the head of said island No. 4, through the mills and factories of itself and its lessees, and so that it cannot pass into the said middle channel or into the said Mead & Edwards mill-pond, the one-half, at least, the entire flow of said Fox river, which one-half includes the one-sixth appurtenant to the said south channel, and the one-third thereof appurtenant to the said middle channel, and which should of right flow

and come into the mill-pond furnishing water to the mills of these plaintiffs; that it, *The Kaukauna Water-Power Company,* has so passed through its canal, and the mills and factories of itself and it lessees, about one half of the flow of said stream during the summer of 1886, to the great damage of these plaintiffs, and by so doing has almost entirely prevented the running of the mills of these plaintiffs, *The Union Pulp Company* and *The Fox River Pulp & Paper Company,* and that it, *The Kaukauna Water-Power Company,* threatens to, and unless restrained by this court will, so draw and pass said half of said stream, and so deprive these plaintiffs of the use thereof, and of the use of their mills; that such interference by said *Kaukauna Water-Power Company* and its lessees and tenants with the hydraulic rights and water-power of these plaintiffs causes great and constantly occurring damage to these plaintiffs; that such damages are not in their nature susceptible of definite calculation, and are constantly varying in amount, because the amount of water drawn wrongfully from said river by said *Kaukauna Water-Power Company* and its lessees and tenants varies at different times, and to keep accurate *data* relative to the same would require the constant attendance of an hydraulic engineer, and because the uncertainty about the water which may from time to time come to plaintiff's said mills makes it uncertain what business may from time to time be done in such mills, and what working force may from time to time be needed therein, or what product may from time to time be manufactured therein.    (13) That [the defendant] The Green Bay & Mississippi Canal Company has a canal leading from the said mill-pond, maintained by said dam across Fox river above said island No. 4, along in line with and north of the north bank of said Fox river, to a point below the head of said island No. 3; that such canal is large enough to pass, and is intended to pass, at least one half of the flow of said river,

and to pass the same down said canal and into said river at a point below the head of island No. 3, and so that the same cannot run and pass into the said middle channel, and so that the same cannot come into the mill-pond formed between said islands Nos. 4 and 3 by the dam from one to the other, and, during the past summer, has so passed about one half the flow of said stream, so that the same has not and could not come into said mill-pond between islands Nos. 3 and 4, called the "Mead & Edwards Water-Power." (14) That the Green Bay & Mississippi Canal Company, and its lessees and tenants, are, and have for several years been, and propose to and will continue, drawing and passing through their canal on the north side of said river from the mill-pond maintained by the dam above island No. 4, to a point below the head of island No. 3, and so that it cannot pass into said middle channel and into the mill-pond furnishing water to plaintiffs' mills, about one half of the flow of the Fox river, and the half appurtenant to the said north channel.

The complaint then alleges that the persons named as defendants in this action are the riparian owners of the south and north shores of said river opposite the islands named and below said dam, or of the shores of said islands, or of some part thereof, or that they have some interest therein as mortgagees, lessees, or otherwise, stating at length the character and nature of such ownership, or that they have some interest in the water-power created by said dam, or in the Mead & Edwards water-power, in the Kaukauna water-power, or in the Green Bay & Mississippi Canal Company's water-power. Then follows the general allegations "that the parties above named are the owners of all the lands bordering the north and south shores of said river, from the head of the upper island No. 4 to the foot of the lower island No. 1, also of the shores of all of said islands;" "that the above-named tenants of the various owners are

all the tenants of all said owners;" and "that all the parties interested in the amount of water appurtenant to the south, middle, and north channels of said Fox river, where the same passes islands Nos. 3 and 4, are named as plaintiffs or defendants."

The complaint concludes with the following prayer for judgment: *First.* Determining and adjudicating what share or portion of the flow of said Fox river, where the same passes islands Nos. 3 and 4, in township No. 21 north, of range 18 east, is appurtenant and of right should be permitted to flow in the south, middle, and north channels of said river respectively. *Second.* Restraining the defendant *The Kaukauna Water-Power Company*, and all persons and corporations claiming under it as mortgagees, lessees, purchasers, or otherwise, and especially all such as are named defendant herein, from drawing from said Fox river above the head of island No. 4, and passing around and below the head of said island No. 4, and so that the same shall not come into the middle channel of said river, and into the mill-pond of these plaintiffs, called the 'Mead & Edwards Water-Power,' more water, flow of said river, than the one-sixth part thereof, or more than the amount which by nature was appurtenant to and flowed in said south channel of said river. *Third.* That *The Kaukauna Water-Power Company* pay to these plaintiffs costs of this action.

To this complaint the defendants *The Kaukauna Water-Power Company*, *The Milwaukee, Lake Shore & Western Railway Company*, *G. Lind*, *Joseph Carlson*, *Brokaw Pulp Company*, *Badger Paper Company*, and *Joseph Kline*, by their attorney, Alfred L. Cary, demur and assign for causes of demurrer: "(1) That the complaint does not state facts sufficient to constitute a cause of action against them. (2) Because it appears on the face of the complaint that the court has no jurisdiction of the subject matter of the complaint. (3) Because it appears upon the face of the com-

plaint that several causes of action have been improperly united." *Michael A. Hunt* and *Anna Hunt* demur separately, and assign the same causes of demurrer. The demurrers were each overruled by the circuit court, and from the order overruling the same separate appeals were taken to this court.

*David S. Ordway*, for the appellants.

*Moses Hooper*, for the respondents.

The following opinion was filed December 13, 1887:

TAYLOR, J. We do not understand that the learned counsel for the appellants have very seriously contended that their demurrers should be sustained upon the second ground alleged, but they have contented themselves with an endeavor to show, on the part of *The Kaukauna Water-Power Company* and those joining with them in the demurrer, that the court erred in not sustaining their demurrer on the ground that several causes of action have been improperly united, and, on the part of the *Hunts*, that no cause of action is stated against them, and that several causes of action have been improperly united. As some argument has been made in the briefs of counsel questioning the power of a court to exercise its equity powers for the purposes of regulating, determining, and apportioning the respective rights of parties in the same water-power, or in apportioning and regulating the use of the water of a river for hydraulic purposes by the several riparian owners adjacent to, and to whose lands such hydraulic power is appurtenant in whole or in part, we call attention to the following cases in which that power has been exercised by a court of equity with the approval of the most learned courts of this country; and we find no cases holding the contrary doctrine, and none have been cited by the very careful and learned attorneys for the appellants on the hearing of these appeals. *Arthur v. Case*, 1 Paige, 447;

*Belknap v. Trimble,* 3 Paige, 577; *Gardner v. Newburgh,* 2 Johns. Ch. 165; *Olmstead v. Loomis,* 9 N. Y. 423; 2 Story's Eq. Jur. (12th ed.), secs. 927 *et seq.; Fisk v. Wilber,* 7 Barb. 395; *Burden v. Stein,* 27 Ala. 104; *Tuolumne Water Co. v. Chapman,* 8 Cal. 392; *Pollitt v. Long,* 58 Barb. 20; *Burnham v. Kempton,* 44 N. H. 78; *Ranlet v. Cook,* 44 N. H. 512; *Bardwell v. Ames,* 22 Pick. 353; *Bemis v. Upham,* 13 Pick. 171; *Ballou v. Hopkinton,* 4 Gray, 324; *Lyon v. McLaughlin,* 32 Vt. 423; *Webb v. Portland Mfg. Co.* 3 Sumn. 198; *Wright v. Howard,* 1 Sim. & S. 190; *Mason v. Hill,* 3 Barn. & Adol. 304; Pom. Rem. §§ 418–422; *Frey v. Lowden,* 70 Cal. 550; *Janesville Cotton Mfg. Co v. Ford,* 55 Wis. 199; *Lawson v. Menasha Wooden Ware. Co.* 59 Wis. 397, 398; *Allard v. Carleton* (N. H.), 3 Atl. Rep. 313.

These cases and numerous others clearly sustain the courts in the exercise of their equity powers in adjusting and protecting the rights of parties interested in hydraulic powers. One reason for the interference of a court of equity in such cases is, perhaps, as well expressed in the case of *Lyon v. McLaughlin, supra,* as in any other. The court in that case say: "The uncertainty of the extent of the prospective injury, and the impossibility of ascertaining the measure of just reparation, render such injury irreparable in a legal sense, and therefore a court of equity will entertain jurisdiction of such a bill, and grant the proper remedy, notwithstanding the respective rights of the parties to the use of the water are in dispute, and depend entirely upon the legal construction of their deeds." In the case of *Belknap v. Trimble, supra,* it was held "that where different mill-owners have a common right to an artifical use of water for their respective mills, the court of chancery has jurisdiction so to regulate the common use as to preserve the rights of each." In *Frey v. Lowden, supra,* the court say there is no doubt of the power of the court of equity to ascertain and determine the extent of the rights

of property in water flowing in a natural watercourse, acquired by persons who hold and are entitled to them, and to regulate between or among them the use of the flow of the water in such a way as to maintain equality of rights in the enjoyment of the common property. But it is unnecessary to cite further cases in support of the equity powers of the courts in such cases.

The mere statement of the case, as made in the complaint in this action, shows the absolute necessity of the exercise of such a power by the courts, in order to protect the rights of the plaintiffs, as well as the rights of all others interested in the use of the hydraulic power created by the fall of the water of the river at the place mentioned. There is no question in this case as to the unsettled and unascertained rights of the respective parties, and the case does not come within the rule laid down in some of the cases, that when the plaintiff's right is disputed, and not clear, he must first have his right settled in an action at law.

The defendants having demurred to the complaint, all the material facts alleged are admitted for the purpose of the decision upon such demurrer. It is admitted, therefore, that in its natural state the water of said river would flow in the south, middle, and north channels as stated in such complaint, and it is further admitted that the defendant *The Kaukauna Water-Power Company* has turned the water which was accustomed to run to the plaintiffs' dam and pond on the middle channel, away from such channel, and that it threatens in the future to continue such diversion of the water, to the destruction of the rights of the plaintiffs in the water-power created by the Mead & Edwards dam and pond, and upon which the beneficial use of their machinery and mills depends, so that, as against *The Kaukauna Water-Power Company* and their grantees and lessees, there is certainly a clear cause of action stated in the complaint.

It is urged as one ground of demurrer that the complaint

also states a separate cause of action against the Green Bay
& Mississippi Canal Company, and for that reason the com-
plaint is subject to the objection that several causes of ac-
tion are improperly joined. We think this contention is
not sustained by the facts stated. The complaint does not
state that the diversion of the water·from the north chan-
nel by the canal company into their canal has taken any of
the water from the river which was accustomed to run
through the middle channel. The allegations in the com-
plaint, so far as they regard the canal company, would not,
if proved, entitle the plaintiff to any damages or relief
against said company. We think the demurrer cannot be
sustained upon that ground by either of the defendants.

The only other question is whether the *Hunts* were prop-
erly made parties to the action. If the only relief sought
was to restain *The Kaukauna Water-Power Company* from
diverting the water from the middle channel in the future,
it might be said there was no reason for making the *Hunts*,
or any others except the *Kaukauna Company* and those
claiming under them, parties to the action. But that is not
the only or the principal relief asked. In addition to the
relief claimed against the *The Kaukauna Water-Power Com-
pany* and those claiming under them, this court is asked to
settle and determine what share or portion of the flow of
the water of said river, where the same passes islands 3 and
4, in township No. 21 N., of range 18 E., is appurtenant
and of right should flow in the south, middle, and north
channels of said river respectively. If the complaint states
facts which entitle the plaintiffs to this relief, and that it
does is shown by the cases above cited, then it is evident
that, in order to settle the rights of the respective owners
of the water-rights in said channels, all persons interested
in the water-rights in said channels, or in either of them,
are proper parties to the action. If it be urged that the
plaintiffs are only interested in having it settled as to what

volume of water should of right flow in the middle channel, the answer to that proposition is that the settlement of that right will necessarily affect the rights of the owners of the water-power in the other channels. The individual rights are so connected that one cannot be settled without affecting all the others.

It is urged, however, that if all the persons having any interest in the flow of the water of the river in the south, middle, and north channels are interested in the settlement of the questions sought to be adjudicated in this case, and so are proper parties in an equity proceeding for that purpose, and are proper parties under the provisions of sec. 2603, R. S., it is not apparent, on the facts stated in the complaint, how the *Hunts*, who owned island No. 2 only, and which is below islands Nos. 3 and 4, which form the three channels in which the flow of the water of the river is sought to be apportioned and determined, have any interest in settling that question. It is true, the complaint does not expressly allege that the *Hunts* have any interest in the matters to be determined in this action, nor that they claim any such interest, but it alleges facts showing that under certain circumstances they might have an interest; that is, that complaint shows that island No. 2 is so situated with regard to the flow of the waters through the south and middle channels that the owners might be interested in the water flowing through such channels if the flow through such channels can be utilized for hydraulic power on the shores of said island, and upon that point the plaintiffs allege they have no knowledge. If the owners of this island can utilize the flow of the water for hydraulic purposes on the shores of said island, then it is quite apparent that they may be interested in having it flow in greater volume through one or the other of these channels, depending upon the facility with which hydraulic powers can be created on one or the other of the shores of said island. As

upon the face of the complaint the *Hunts* may have an interest in the questions to be determined in the case, we think they may be properly made parties to the action under the section of the statute above quoted. If they are in fact indifferent, or have no interest in the matter, they can disclaim any such interest, and may upon such disclaimer be dismissed therefrom. If they have any interest, they can set it forth and have it protected, and so have an end of litigation. The effect of the allegations in the complaint as to island No. 2 and its ownership by the *Hunts*, is that the *Hunts* may have an interest in the question to be litigated, although the nature of such interest is not known by the plaintiffs, and they are asked to come into court and disclose their interest or disclaim having any interest in the controversy, so that they cannot hereafter disturb the settlement of the rights of the parties as determined by the judgment in this action. We think they were properly made parties defendant. *Wilson v. Castro*, 31 Cal. 420.

*By the Court.*— The order of the circuit court overruling the several demurrers of the appellants is affirmed, and the cause is remanded for further proceedings.

Motions for a rehearing on each of the appeals were denied February 28, 1888.