SUSAN C. WARREN, and others, in equity,

*vs.*

WESTBROOK MANUFACTURING COMPANY, and others.

Cumberland.   Opinion June 1, 1895.

*Waters.   Partition.   Island.   Equity.*

Equity has jurisdiction to make partition of the use of water between opposite riparian proprietors when necessary to secure an equal use or enjoyment in their rights.

In the last decision of the court upon the rights of the parties to the use of the waters of the Presumpscot river for mill purposes, (86 Maine, 32,) it appeared that there were two channels, eastern and western, around an island,

flowing past the riparian parties at Saccarappa Upper Falls. The court there decided upon the issue then raised (1,) that a riparian ownership of three out of four shores of two channels upon the same river does not itself establish a right to use three-fourths of all the water of the whole river; and (2,) that where no statute, contract or prescriptive right is invoked, the court will not undertake to wholly or partially apportion the waters of the river between the two channels, but will leave the parties to accommodate themselves to the division made by nature.

In this proceeding other facts appear and further allegations are made under which the plaintiffs claim, among other things, that the increased use of the waters by the defendant renders the whole power insufficient for the mills of all the riparian owners; that unless they can be assured of the steady and regular use of their full, rightful proportion of the water power, they cannot profitably operate their mills and cannot venture to undertake further operations, by reason of the cloud thus thrown over their rights.

*Held;* that the controversy here relates solely to the use of the flow of the water for the propulsion of machinery, and that the Court can and should make such division of the use of the flow of water between the opposite riparian proprietors as will secure to each a use or enjoyment equal to his right.

*Also, held;* that the bill should be further amended in statement to present all claims of right in any part of the falls and waters arising from riparian ownership, contract, prescription, or any other source.

The prayer for relief should be amended to include a division of the use of the water in each channel and the whole river, and any other action of the court necessary to finally and completely adjust this controversy.

See *Same* v. *Same*, 86 Maine, 32.   *Westbrook Manufacturing Co.* v. *Warren*, 77 Maine, 437.

ON REPORT.

This was a bill in equity, heard on bill and demurrers of the defendants severally ; the parties stipulating that, if the demurrers were overruled, the defendants might answer further.

The bill prayed for a partition of waters, based upon the following facts :

The Presumpscot river, a non-tidal stream, as it flows through Saccarappa Village at the place called Saccarappa Upper Falls, forms an island about three hundred and fifty feet long, and one hundred and fifty feet wide. In forming this island, the river divides itself into two branches or channels ; one flowing on the easterly side, and the other on the westerly side of the island. In each of these branches or channels, are falls affording valuable water power. A dam has been built across each channel. These dams are substantially in line with each other, and form with the island a continuous dam across the whole river. There are

several mills on the island, and other mills on each side of the main river opposite the island. The mills on the eastern mainland, and on the eastern side of the island, are supplied with water from the dam across the eastern channel. The mills on the western mainland, and on the western side of the island, are supplied with water from the dam across the western channel.

The plaintiffs, other than Mary Little Hale Dana, own the western side of the island, the land under the western channel, and the land on the west side of the river opposite the island. They also own the dam across the western channel and the mills supplied by it.

Mary Little Hale Dana, one of the plaintiffs, has some interest on the west side of the river. She also owns the eastern side of the island, and the adjoining land under the water to the middle line of the eastern channel. She further owns so much of the dam across the eastern channel as is on her land, together with the mills on the easterly side of the island, supplied from this dam.

The defendant company owns the land on the east side of the river opposite the island and the adjoining land under the water to the middle line of the eastern channel, or to the land of Mrs. Dana. It also owns so much of the dam across the eastern channel as is on its land, together with the mills on the eastern main shore, which are supplied from this eastern dam.

All the plaintiffs are therefore the sole riparian owners on both sides of the western channel, and owning the land under that channel. Mrs. Dana is the sole riparian owner on the west side of the eastern channel and owning to the centre line.

The complaint and prayer as stated in complainants' bill, are based on the following assumptions, viz: (1,) That the defendant is entitled to only one-fourth of all the water flowing to and through both channels; (2,) that the plaintiffs are entitled to three-fourths of all the water so flowing, and now desire and are planning to use it; (3,) that the defendant against the protest of the plaintiffs has been drawing out of the dam across the eastern channel, and using to turn his mill on the east side of that channel more than his one-fourth of all the water in the river.

Briefly stated, the case is this : The Presumpscot river at Saccarappa Upper Falls, is divided by a natural island, into two channels of approximately equal capacity, and the plaintiffs and defendants are the owners of all the land and water power at these falls.

The defendant company owns the land forming the easterly half of the eastern channel, and is entitled to the use of the water flowing naturally there ; being one-half of the water flowing in such easterly channel.

The plaintiff, Mrs. Dana, owns in severalty the land forming the westerly half of the easterly channel, and all the plaintiffs together, by virtue of conveyances and contracts between themselves, own the water flowing naturally in that westerly half of the eastern channel as tenants in common.

That the whole river has been improved and used for many years by dams in each channel, and mills upon all the shores ; and, until 1882, all the parties had used practically all the water they were entitled to ; at that time (1882), the defendant company built upon its land, upon the easterly bank of the easterly channel, a large factory, and has since drawn and used much more water than it was entitled to, against the protests of the plaintiffs, who were thereby obliged to shut down their mills, in whole or in part, many times for want of water then flowing in the river and to which they were entitled, reducing the out-put and increasing the expense and preventing the otherwise successful operation of the mills, and such use of the water by the defendants, if persisted in, will cause great and irreparable injury to the plaintiffs.

To prevent such misuse of the water by the defendants and to secure to themselves their full and just share of the water for the future, they asked a decree of the court fixing the rights of the parties in the water, and water rights and power in said easterly channel, and dividing such water or regulating its use between the plaintiffs and the defendants according to their respective rights, ascertaining and determining the same by surveys, measurements or such other devices as are in proper and common use by hydraulic engineers for such purposes.

*Hanno W. Gage and Charles A. Strout*, for plaintiffs.

*Warren and Brandeis*, and *Warrens and Mason*, of the Boston Bar, also filed a brief on the same side.

*J. W. Symonds, D. W. Snow and C. S. Cook*, for defendants.

SITTING: PETERS, C. J., EMERY, FOSTER, WHITEHOUSE, WISWELL, JJ.

HASKELL and STROUT, JJ., having been of counsel, did not sit.

EMERY, J. This controversy is over the use for mill purposes of the waters of the Presumpscot river, where it flows in two channels, eastern and western, around an island past the riparian lands of parties at Saccarappa Upper Falls. It is of several years standing, and has been unsuccessfully brought before the court on two former occasions at least. It should now be authoritatively and finally adjusted, if within the power of the court upon the allegations in this or an amended bill. A full statement of the physical, hydrographic facts is given in the case, *Warren v. Westbrook Manuf'g Co.* 86 Maine, 32, to which reference is made.

When the controversy first came before the court, in the case, *Westbrook Manuf'g Co. v. Warren*, 77 Maine, 437, the now defendant alleged that it was entitled to use one-half of the water power of the river at those falls, and that all the other riparian owners, collectively, were not entitled to more than the other half. It did not seek to have the respective rights of the riparian owners in the water power determined, nor did it seek for any action of the court that would divide the use according to the right. Its demand was for a general injunction upon all the other riparian owners, against their using collectively more than half of the water power of these falls, and this without showing that the damages recoverable at law would not be full compensation for any injury sustained. The court held that, under the allegations, this demand could not be granted.

The controversy again appeared in the case above cited, 86 Maine, 32. In that case the defendants in the first case appeared as plaintiffs. They alleged that they owned lands and mills on

both the main-land and island side of the western channel, and also the dam across that channel ; that one of them owned land and mills on the island-half of the dam across the eastern channel ; that the defendant owned land on the main-land side of that channel, and also the main-land half of the dam across the channel.   They further alleged that, by virtue of this riparian ownership of three out of the four shores of the two channels, they were entitled to use three-fourths of the sum of the waters of the two channels, or three-fourths of all the water of the whole river.   They asked the court to divide the water of the whole river in that proportion, so that they could use three-fourths and the defendant only one-fourth.   They based their claim for the desired judicial action exclusively upon their riparian ownership, above stated, and without invoking any statute, contract or prescriptive right.

The opinion was wearily long, but the only points decided were :   (1,) that a riparian ownership of three out of four shores of two channels upon the same river, does not of itself establish a right to use three-fourths of all the water of the whole river ; and (2,) that where no statute, contract or prescriptive right is invoked, the court will not undertake to wholly or partially apportion the waters of the river between the two channels, but will leave the parties to accommodate themselves to the division made by nature.   Early in the opinion the court gave this cautionary notice :   "It should be continually borne in mind that we are considering the legal rights and duties based on the situation of the parties, and unmodified by any statutes, grants, contracts or prescriptions.   None of these latter matters are stated in the bill, and their possible modifying effects are not considered here."

This time the plaintiffs allege the various riparian ownerships substantially as before, and they now further allege that a dam (one across each channel) has existed under the successive riparian proprietors, in substantially the same place as the present dam, for one hundred years.   They also allege that, for ninety years after the dams were built, one-half of the water of the river has flowed through each channel, and that the water

would continue to flow through the channels in that proportion but for the wrongful acts of the defendants; that prior to the year 1882, the defendants, and its predecessors in title, used less than one-half of the water power upon the eastern channel, and less than one-fourth of the whole power of the river, and that there was then sufficient power for the mills of all the riparian owners; that in the year 1882, the defendants greatly enlarged and increased its mills, and then began to use, and have persisted in using, and propose to use in the future, more than one-half of the water power on the eastern channel, and more than its due proportion of the water power of the river. They allege that this increased use by the defendants renders the whole power insufficient for the mills of all the riparian owners; that unless they can be assured of the steady and regular use of their full, rightful proportion of the water power, they cannot profitably operate their mills, and cannot venture to undertake further operations, by reason of the cloud thus thrown over their rights.

With these allegations, the plaintiffs ask the court to determine the right or proportional share of each party in the water power of the eastern channel, and to effect between the riparian owners upon that channel, such a division of the use of the water-flow as will enable each to profitably utilize his rightful proportional share.

The defendants demur generally to the bill, and argue that it is a disguised attempt to induce the court to undertake a division of the whole water of the river between the two channels, an undertaking which the court has once declined. It is evident, and is frankly admitted by the plaintiffs, that a decree dividing and regulating the use of the water in either channel, may substantially affect the water power in the other channel; and that, to do full justice, the court may find it necessary to deal with the whole matter of all the water power at these falls.

The controversy demanding our attention is solely over the use of the flow of the water for the propulsion of machinery. The underlying question is whether, upon the case now presented, the court has and should exercise the power to ascertain, define and mark out for each party the extent of his share or

right in the use of the common flow of the water; or, in other words, whether the court can and should make such a division of the use of the flow of water between opposite riparian proprietors, as will secure to each a use or enjoyment equal to his right.

The waters of a river, in flowing from its highland sources down to the sea, develop a force convertible into mechanical power. The amount of this force depends upon the volume and momentum of the flowing water. The momentum depends on the height or distance of the fall of the water. To increase this volume and momentum, and make them sufficient and available for propelling machinery, dams are constructed, which accumulate the water of the river in larger volume and at a higher level than are natural. Where one party owns the whole dam and the land on both sides of the river, he has the right to the entire usufruct of all the power of the water as it accumulates at his dam. Where one party owns the land on one side of the river, and another party owns the land on the opposite side, (their lands coming together under the river midway between the two banks) and each owns the half of the dam on his land, then neither party is entitled to have the whole power of the accumulated water applied to his machinery. Each party has only an equal right with the other. Each has a right to use one-half of that power; but whatever part of that half he does not use, the other party can freely use. There is no proprietorship in the water, but only a right in its use, and one riparian owner may use so much as the other is willing to let go to waste. *Pratt* v. *Lamson*, 2 Allen, 275.

When the power is sufficient, from the volume or head of water, to propel at all times all the machinery both parties have set up, there is no occasion for any controversy. When, however, the power has become so reduced, or the machinery so increased that, for all or part of the time, the whole power of the water will not drive all the machinery, then the parties must in some way make a division of this reduced power, or its useful-

ness to either will be destroyed. If each competes with the other in a race to first appropriate the limited power to his machinery, the accumulation and head of water will soon be dissipated, the efficient power of the water exhausted, and all hope of its restoration be destroyed.

In this State the opposite mill owners upon our thousands of water falls have usually made this division of the use of the water power by mutual agreement. The division has been effected in various ways; by fixing hours or days for the alternate use of the water; by fixing the number and area of gates to be used at different stages of the water; by fixing water-marks for the cessation of all use until the agreed head of water is again accumulated; and by various other devices. Our judicial reports show a happy scarcity of litigation of this kind, and thus testify to an intelligent and well-developed sense of justice and fairness in this important class of our people. On this particular water fall, however, (by reason, perhaps, of its peculiar character,) the opposite mill owners cannot agree upon any mode of dividing the now limited water power; and they disagree, also, as to their proportional rights in that power.

These differences having arisen concerning the use of an ancient and valuable water power, it would be a reproach to our jurisprudence, if the court did not possess and exercise the power to authoritatively adjust them. The alternative would be a destructive competition in the use of the water, until it was rendered valueless to the parties and to the community.

It is evident, also, that the power to be exercised by the court should be that of prevention, rather than that of redress. To make the water power of economic value, the rights to its use, and the division of its use, according to those rights, should be determined in advance. This prior determination is evidently essential to the peaceful and profitable use by the different parties having rights in a common power. To leave them in their uncertainty, —to leave one to encroach upon the other, — to leave each to use as much as he can, and leave the other to sue at law after the injury, — is to leave the whole subject matter to possible waste and destruction.

These considerations make firm ground for the exercise of the court's preservative and preventive jurisdiction in equity, as prayed for here. There are also abundant authorities. *Bardwell* v. *Ames*, 22 Pick. 333 ; *Ballou* v. *Hopkinton*, 4 Gray, 324 ; *Lyon* v. *McLaughlin*, 32 Vt. 423 ; *Adams* v. *Manning*, 48 Conn. 477 ; *Burnham* v. *Kempton*, 44 N. H. 78 ; *Lehigh Valley R. R.* v. *Society*, &c., 30 N. J. Eq. 145 ; *Frey* v. *Lowden*, 70 Cal. 550 ; *Paper Company* v. *Kaukauna Water Power Co.* 70 Wis. 659 ; *Arthur* v. *Case*, 1 Paige, 447 ; *Head* v. *Amoskeag Manuf'g Co.* 113 U. S. 9 ; *Lockwood Mills* v. *Lawrence*, 77 Maine, 297.

It is suggested that the peculiar physical features of this case are such, that the court cannot make a just and practicable division of the use of the water ; that while the court may have the theoretical right, it has not the practical power to make the desired division. Whether this difficulty really exists, can be better determined after the parties have presented their evidence. If the plaintiffs cannot then make clear to the court the practicability of their request, it may be properly denied.

It is urged that, while the prayer of the bill is limited in terms to a division of the use of the water flowing through the eastern channel, the court's action, even if confined within that limited prayer will necessarily affect the flow in the western channel, and may thereby enable the riparian owners on that channel to secure or retain some water power they otherwise would not have. The chance of such a result should not deter the court from attempting to do justice. Indeed, it may be an additional reason for the court's exercising its power more comprehensively and completely. As the case is now presented, the two dams make with the island practically one dam, and have been maintained as such for a hundred years. Each dam has for that time operated to increase the head at the other dam, by presenting an obstacle to the escape of the water around the island when flowed back by the other dam. The desired head of water at each dam has been kept up by both dams. The whole water of the river has been kept back and accumulated by the joint effect of both dams. Each riparian proprietor upon

either channel has used his riparian rights as they have been enlarged or diminished, or otherwise modified, by these ancient dams. The owner of each end of the eastern dam may have acquired a prescriptive right in the continued maintenance of the other end. The owners of the dam across each channel may have acquired a similar right in the continued maintenance of the dam across the other channel. In like manner, the long existence and use of these dams may have so affected the flow of the water through the different channels, that the natural flow is no longer the rightful flow. *Murchie* v. *Gates,* 78 Maine, 300.

As the case is now stated, neither party seems to have a naked, natural, unmodified right, such as was considered and defined in the former opinion, 86 Maine, 32. Nor can the riparian owners upon either channel now successfully insist that they are in a state of nature, and totally independent of the riparian owners upon the other channel as to the flow, or use of the flow, of the water in their own channel. The interests of the riparian proprietors upon both channels now appear to be intertwined, if not amalgamated. Thus intertwined, the interest of each proprietor upon either channel spans the whole river across both channels. Each has an interest in the regulation of the whole flow of all the water, into whichever channel it may turn.

Under such circumstances, it may be that complete justice cannot be done, even between the opposite riparian owners upon the eastern channel, without determining the rights of all the parties upon both channels, and dividing among them the use of the whole flow of the river, according as their rights may finally appear.

In view of the matters suggested, as well as those directly alleged in the bill, and in view of the hitherto unsuccessful attempts of both parties to secure judicial relief from their embarrassments, we think the court should now attempt, after proper amendments, to adjust all the rights of all the parties in the whole water power in both channels, and to divide the use of the water power in each channel, so that each party may enjoy his full right in the premises. If this seems a departure

from the conservative course the court has hitherto pursued when asked to exercise its equity powers, as in *Jordan* v. *Woodward*, 38 Maine, 423 ; *Manufacturing Co.* v. *Warren*, 77 Maine, 437 ; *Haskell* v. *Thurston*, 80 Maine, 129 ; we think the exigencies of this particular case fully justify it.

The demurrers stricti juris must be sustained, since by inadvertence, no doubt, the plaintiffs have made contradictory statements of the title of the easterly half of the eastern channel. This error, however, can be easily cured by amendment. The bill should also be further amended in statement to present all claims of right in any part of these falls, and waters, arising from riparian ownership, contract, prescription or any other source. The prayer for relief should be amended to include a division of the use of the water in each channel, and in the whole river ; and any other action of the court necessary to finally and completely adjust this controversy.

> *Demurrers sustained. Bill retained for amendment, and further proceedings. If amendments not filed within sixty days bill to be dismissed.*