Koenig and another, Appellants, vs. The City of Watertown, Respondent.

*September 27 — November 7, 1899.*

*Waters: Easements: Injunction against filling up reservoir.*

A flume and mill races below a dam constituted a reservoir from which, by virtue of a certain agreement and conveyances between the predecessors in interest of the respective parties, plaintiffs had the right to draw water for their flouring mill. The defendant city, having become the owner of the fee of a part of the land on which such flume and races were, threatened to fill them up on the land so acquired and across an adjoining public street. Such a reduction in the size and capacity of the reservoir would tend, at certain stages of the water in the river, to reduce the supply of water at plaintiffs' mill and impair the use of their property. *Held,* that the remedy at law would be inadequate and that plaintiffs were entitled to have such filling restrained by injunction.

APPEAL from an order of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

For the appellants there were briefs by *R. B. & I. B. Kirkland,* and oral argument by *I. B. Kirkland.* To the point that the plaintiffs had no adequate remedy at law for the change that is threatened, they cited Fetter, Equity, 290, 299; Willard, Eq. Jur. 370, 373; 2 Bl. Comm. 282; 10 Am. & Eng. Ency. of Law (1st ed.), 823, note 1; *Brock v. Dole,* 66 Wis. 142; High, Injunctions (3d ed.), §§ 649, 702; *Wilson v. Mineral Point,* 39 Wis. 160; *Kimberly & Clark Co. v.*

*Hewitt,* 75 Wis. 371; *Lawson v. Menasha W. W. Co.* 59 Wis.
393; *Lyon v. McLaughlin,* 32 Vt. 425; *Valley P. & P. Co.
v. West,* 58 Wis. 599; *Scudder v. Trenton D. F. Co.* 23 Am.
Dec. 756; *Troe v. Larson,* 84 Iowa, 649; *Musch v. Burkhart,*
12 L. R. A. 484; Gould, Waters, § 509.

*Harlow Pease,* for the respondent.

CASSODAY, C. J.  This is an appeal from an order sustain-
ing a demurrer to the complaint in an action to restrain the
defendant from carrying out the resolution of the defendant
and filling in the mill race from defendant's southerly end
to the north line of Milwaukee street, or any part thereof.

The complaint alleges, in effect, that at the time of the
commencement of this action, and for more than forty years
next prior thereto, there was a dam across Rock river at the
place described, and a water power created thereby, and the
same was then within the limits of the defendant city, and
also a mill race and flume connected with and appurtenant
to the dam, on the east side of the river, and near thereto,
which mill race and flume extended from the dam in a south-
erly direction for about 1,000 feet, running through what
was commonly known as the "hydraulic reserve" and
blocks 30, 39, and 40 in the First ward of the city to that
part of block 40 where the brick flouring mill of the Globe
Milling Company formerly stood, and which a few years
before was destroyed by fire; that April 27, 1886, and for
some time prior thereto and thereafter, one Frank Koenig,
father of the plaintiffs, since deceased, was the sole owner
in fee and lawfully possessed of the undivided one-half of
the whole of the dam, and of all the water power con-
nected therewith or appurtenant thereto at the east end and
eastern half thereof, subject only to certain easements or
water rights; that he was also the sole owner in fee and
lawfully possessed of the whole of the mill race and flume
extending from the dam down to the south line of lot 1 in

block 30; also the sole owner in fee and in the lawful pos-
session of lot 1 in block 30; and also of a piece of land fifteen
feet in width adjoining such lot on the north, and of the
flouring mill and appurtenances thereto belonging and then
situate thereon; and also the owner in fee and lawfully pos-
sessed of all that certain piece and parcel of land commonly
known as the "hydraulic reserve," except a strip 150 feet
wide off from the north end thereof, and which was several
hundred feet above the dam, and had never been in any way
connected with the dam or the water power appurtenant
thereto; that April 27, 1886, and for some time prior thereto
and thereafter, the Globe Milling Company. was running,
operating, and conducting a flouring mill situate on block 40,
and was the sole owner in fee and lawfully possessed of the
whole of block 40 and part of block 39, and thereafter ac-
quired all of block 39, and was the sole owner in fee and
lawfully possessed of all that part of the mill race and flume
commencing at the south line of lot 1 in block 30 and ex-
tending and running in a southerly direction to that part of
block 40 where the brick flouring mill of the Globe Milling
Company then stood.

The complaint then alleges that April. 27, 1886, Frank
Koenig and the Globe Milling Company, being such owners,
duly entered into a written agreement under seal, witnessed,
acknowledged, and recorded, to the effect that the Globe
Milling Company, in consideration of $7,000 to be paid to it
by Frank Koenig, thereby covenanted and agreed to convey
to Frank Koenig, his heirs and assigns, 4,948.8 cubic feet of
water per minute, which was by the partition judgment ad-
judged to Miller and Sleeper, by warranty deed, subject to
all charges that might thereafter accrue or should be im-
posed upon such water for repairs and rebuilding of the
dam, and the river next above the dam on the east side of
the river, and for repairing and rebuilding and maintaining
the main race and flume from the dam down to the brick

Koenig and another vs. The City of Watertown.

mill on block 40, all of which charges were therein assumed
by Frank Koenig, except as otherwise provided, which water
was to be drained by Frank Koenig, his heirs and assigns, at
any or all the weirs and sites of water rights mentioned in
such judgment as he or they might choose; that Frank
Koenig, in consideration of such conveyance to him, thereby
covenanted and agreed to convey by warranty deed to the
Globe Milling Company 15,000 cubic feet of water per
minute, or so much thereof as would flow or pass over the
weir for the mill on block 40 of the length as determined by
such partition judgment, after the weir should be raised and
permanently fixed and fastened to a height of two feet below
the horizontal plane of the crest of the dam above the water,
to be drained from the river above the dam through the
main race and flume on the east side of the river without
any interference or hindrance to the free and unobstructed
flow thereof through the main race and flume to the weir
on block 40, provided that none of the 15,000 cubic feet of
water per minute should be drawn or used at block 40, or
at the mill thereon, unless or except when the water in the
river above should flow over the top of the dam at some
point thereof; such conveyance and grant to be subject to
one third part of the repairs and improvements thereinafter
to be made on the main race and flume from the dam down
to the weir on block 40, and to the third of the repairs and
rebuilding of the head gates in the main race and flume, all
of which third part of the charges and expenses were to be
assumed by the Globe Milling Company; that the main race
and flume from the dam to the mill on block 40, and the
head gates therein, should be owned henceforth in common
by the parties thereto; that each and both of the parties,
their heirs, assigns, and successors, should have the right of
access to the head gates, and to any and all points on the
main race and flume, over and across the lands of each other
and such lands over which Frank Koenig should have re-

served the rights of way, such access being for the purposes only of making repairs to the main race and flume and to the head gates, and rebuilding the same, and of regulating the head gates and observing the flow of water through the main race and flume and at the mills thereon, and measuring the same; that when it should become necessary, in order to repair the head gates, the main race and flume, or any of the mills taking water therefrom, either of the parties, on twenty-four hours' notice to the other, and, in case of emergency, without notice, might lower the head gates so as to shut the water out of the main race and flume; that when the stage of water in the river above the dam was so high that, if allowed to flow into the race and flume below the head gates at its full height or level, it would flow over and endanger the bank between the main race and flume and the river, then in that case the head gates might be lowered so as to reduce the height or level of the water in the main race and flume below the head gates so that the bank might not be overflowed or endangered; that the main race and flume should not thereafter be contracted or narrowed at any point, and that all the water to be drained from the main race and flume for propelling machinery of any kind should be drained over or through, as the case might be, one or more of the following designated weirs and openings, to wit: The weir of the Globe Milling Company at their mill on block 40, and when raised to be kept and permanently fastened at a height of two feet below the level of the horizontal plane of the crest of the dam, and the weir at Frank Koenig's mill at the south end of his hydraulic reserve on lot 1 in block 30, as there stated; that Frank Koenig should have the right to maintain in the main race or flume the four posts or timbers upon which his elevator then rested, and, in case a break should occur in that part of the main race or flume below his mill, or if it should become necessary to make repairs on that part of the same, then, in either case, Frank Koenig should have the right to

make and construct in the main race or flume, below where he drains water to his mill, temporary gates or a cofferdam, which, on completion of the repairs, should be entirely removed at the sole expense of Frank Koenig,. but that at all times except when it should become necessary to repair the head gates, main race, or flume, or any of the mills entitled to take water therefrom, the whole of the main race and flume should be kept well filled according as the head in the river above might be with water, which should not be shut out of the same, and the Globe Milling Company should at all times have the right to take from the main race a quantity of water sufficient to run the steam condenser in their mill on block 40; that Frank Koenig, as to the Globe Milling Company, thereby assumed two thirds of the repairs and improvements thereafter to be made upon the main race and flume from the dam above down to the weir on block 40; also the whole of the repairs and maintenance of the main weir above the dam, and two thirds of the repairs and rebuilding of the head gates, and the whole of the dam repairs and maintenance which were then chargeable to the water power on the east side of the river, but he should be free to use and secure for such repairs and maintenance such aid and help for his share thereof from the other owners (besides the Globe Milling Company) of water rights or of water to be drawn from such race or flume as was then provided for and as might thereafter be secured; that Frank Koenig and his heirs and assigns might draw all the water he or they might own appurtenant to the dam and water power, or any part thereof, at either or both of his two upper weirs, they might choose, at all times, and he and they should also have the right to sell and dispose of the same, or any part thereof, to be drawn at any or all the weirs and water-right sites mentioned in the partition judgment, but, in no case should the upper weir be kept at a lower level than was therein provided for.

The complaint further alleges that thereafter, and on April

27, 1886, in full compliance with the written agreement, the Globe Milling Company duly made, executed, and delivered to Frank Koenig its warranty deed of the property therein required by it to be so conveyed, and which deed was duly recorded April 30, 1886; that at the same time, in full compliance with such agreement, Frank Koenig duly made, executed, and delivered to the Globe Milling Company his warranty deed of the property therein required by him to be conveyed, and which deed was duly recorded April 30, 1886; that thereupon, by virtue of the agreement in such deeds, Frank Koenig and the Globe Milling Company became and were the sole owners in fee and lawfully possessed of the whole of the mill race and flume in common from the dam down to that point in block 40 where the brick flouring mill of the Globe Milling Company then stood; that April 28, 1894, Frank Koenig died testate; that his last will and testament was duly admitted to probate July 3, 1894; that by such will all of the interest of which Frank Koenig died seised in the mill race and flume was devised, in common and undivided, to Edward C. Koenig and to these plaintiffs; that the right, title, and interest of which Frank Koenig died seised in and to the property mentioned passed to and became vested in his three sons named by the judgment of the county court duly made and entered of record April 3, 1895; that before the commencement of this action Edward C. Koenig, by quitclaim deed, duly conveyed all and every his right, title, and interest in and to said mill race and flume to the plaintiffs herein; that thereafter, and before the commencement of this action, the Globe Milling Company, by three several and separate deeds of conveyance, duly conveyed to the Watertown Waterworks Company all of block 39, reserving a right (unnecessary here to mention) and which deed was duly recorded February 1, 1896; also a strip of land 100 feet wide, directly north [south?] of block 39, and the deed of which was duly recorded February 1, 1896; also

block 40, together with the water power appurtenant thereto, and in and by which conveyance it was expressly covenanted that for a particular description of such water power and the conditions and terms under which the same was to be used reference was and is had to the deed from Frank Koenig to the Globe Milling Company, recorded April 30, 1886, and to the agreement mentioned, recorded April 30, 1886; that thereafter, and before the commencement of this action, the Watertown Waterworks Company duly conveyed to the defendant all the property theretofore conveyed by the Globe Milling Company to it, and the same was duly recorded September 23, 1896, and in and by which deed of conveyance the defendant agreed to assume the terms and conditions of the agreement theretofore entered into by and between Frank Koenig and the Globe Milling Company, and above set forth; that thereupon the plaintiffs became the owners in fee and lawfully possessed of the mill race and flume from the dam down to that part of block 40 where the flouring mill of the Globe Milling Company formerly stood, in common with the defendant.

The complaint then alleges that ever since the city acquired such right, title, and interest the plaintiffs and the defendant have been, and still were and are, the owners in fee and in lawful possession of the mill race and flume from the dam down to that part of block 40 where the flouring mill of the Globe Milling Company formerly stood, in common and undivided; that such purchase by the city was under and by virtue of an ordinance duly passed and made September 15, 1896; that the flouring mill and appurtenances on lot 1, block 30, and the strip of land north and adjacent thereto, were, before the commencement of this action, the sole property of the plaintiffs, and have been continuously in use and operation, conducted, managed, and operated solely by the plaintiffs, ever since the death of Frank Koenig, as a flouring, feed, and custom mill, with a large and lucra-

tive business, and that the same was of great and permanent value to the plaintiffs as such flouring, feed, and custom mill; that the water used for propelling machinery of said mill was and is conducted down and through the mill race and flume, and that the same was and is of great and permanent value to the plaintiffs; that such race and flume south of their mill, and in which they have an ownership in fee in common and undivided with the defendant, is of great and permanent value to the plaintiffs as a reservoir wherein to hold water, and for other great, permanent, and valuable purposes; that the defendant, by its common council, at a regular meeting thereof duly held June 21, 1898, duly passed and adopted a resolution to cause to be filled in all of said mill race from its present southern end to the north line of Milwaukee street, and in which the plaintiffs were and are the owners in fee in common and undivided with the city; that to fill in such mill race as contemplated by such resolution, would cause great and irreparable injury to the plaintiffs in their property rights in the south end of such mill race in numerous ways therein mentioned.

The facts alleged in the complaint are somewhat complicated, but it appears from a careful reading that the mill races and flume extend from the dam down to the place where the brick flouring mill of the Globe Milling Company formerly stood,— a distance of about 1,000 feet; that from the dam south to a bridge near the mill of the plaintiffs — a distance of about 400 feet — is designated as the mill race, and which, for convenience, will be called the *upper* mill race; that from that bridge south to the north line of Milwaukee street — a distance of about 325 feet — is designated as the flume; that from the north line of Milwaukee street south to the place where the brick flouring mill of the Globe Milling Company stood when it was destroyed by fire — a distance of about 275 feet — is designated as the mill race, and which for convenience will be called the *lower* mill race;

that the waters in the upper and lower mill races and the flume are all drawn through the same head gate at the dam, first passing from the mill pond through the head gate into the upper race, and from thence into and through the flume into the lower race; that the surface of the waters of the upper mill race, the flume, and the lower mill race have been since April 27, 1886, and now are, all practically on the same level; that the plaintiffs have succeeded to all the rights, titles, and interest which Frank Koenig had in and to the dam, the water power, the upper and lower raceways, subsequently to the agreement, conveyances, and transfers made on or about April 27, 1886, and subject to all the conditions, stipulations, and covenants contained in that agreement and those conveyances and transfers; that the defendant has succeeded to all the rights, titles, and interest which the Globe Milling Company had in and to the dam, the water power, the upper and lower raceways, subsequently to the making of the agreement, conveyances, and transfers mentioned, and subject to all the conditions, stipulations, and covenants contained in them. Thus it appears that the flume and the upper and lower mill races constituted a reservoir from which Frank Koenig and those claiming under him, and the Globe Milling Company and those claiming under it, had the legal right, in common, to draw water for their respective mills, as prescribed in the agreement, conveyances, and transfers mentioned. This action is to restrain the defendant from completely filling up the lower race, being from the north line of Milwaukee street to the south end of the lower mill race,— a distance of about 275 feet; thus completely destroying that portion of the reservoir, notwithstanding the agreements, stipulations, conditions, and covenants mentioned. That such reduction in the size and capacity of the reservoir would, at certain stages of the water in the river, tend to reduce the supply of water at the mill of the plaintiffs in violation of their rights, is quite manifest. Secs. 2774, 2775, Stats. 1898. True, the

plaintiffs have no property in the particles of water flowing in the stream, but only have the right to use their share of it as indicated. *Willow River Club v. Wade*, 100 Wis. 102. True, the defendant has the fee of the land in blocks 39 and 40, where most of the proposed filling is to be made, but it holds such title subject to the easements created in favor of the plaintiffs by the agreement, conveyances, and transfers mentioned. So Frank Koenig, and the plaintiffs claiming under him, had the fee of the lands above, yet he and they held such title subject to the easements created in favor of the Globe Milling Company, and those claiming under it, to draw water from the dam through the head gate, upper race, and flume. Such right to draw water from the pond and to flow lands could certainly be created by the written instruments mentioned. *Noonan v. Orton*, 4 Wis. 335; *Spensley v. Valentine*, 34 Wis. 154; *Sabine v. Johnson*, 35 Wis. 185.

But counsel contends that the plaintiffs have an adequate remedy at law, and hence that the demurrer should be sustained. We are clearly of the opinion that the plaintiffs have no adequate remedy at law. In so far as the preservation of the reservoir for holding water is beneficial to the running of their mill, the plaintiffs have the right to maintain the same according to the agreements, stipulations, conditions, and covenants mentioned. The injury complained of goes to the impairment of the use of the property belonging to the plaintiffs. The right to an injunction in such a case is supported by numerous authorities. *Pettigrew v. Evansville*, 25 Wis. 223; *Wilson v. Mineral Point*, 39 Wis. 160; *Lawson v. Menasha W. W. Co.* 59 Wis. 393; *Fox River F. & P. Co. v. Kelley*, 70 Wis. 287; *Patten P. Co. v. Kaukauna W. P. Co.* 70 Wis. 659; *Kimberly & Clark Co. v. Hewitt*, 75 Wis. 371. It is not the case of a mere breach of contract or private trespass.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.